**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **EMILY S. LYONS,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **NO. 5:26-CV-00065-MAS** |
| **FRANK J. BISIGNANO, Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Emily S. Lyons ("Lyons") appeals the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court considers the parties' respective briefs. [DE 9 (Pl.'s Br.); DE 16 (Comm'r Br.); DE 17 (Pl.'s Reply Br.)].

Lyons raises a single claim of error. She contends the Administrative Law Judge ("ALJ") failed to account for the "total limiting effects" of her impairments when formulating her residual functional capacity ("RFC"). [DE 9, PageID# 1137]. She offers two reasons. First, she argues the ALJ failed to properly evaluate the opinion of Bradley A. Sansom, Ed.D., under 20 C.F.R. § 404.1520c. Second, she contends the ALJ neglected to discuss her fibromyalgia, contrary to Social Security Ruling 12-2p. [DE 9, PageID# 1137]. The Commissioner responds that substantial evidence supports the ALJ's decision. [DE 16, PageID# 1166].

For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports his decision. Accordingly, the Commissioner's final decision is affirmed.

## I. LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search of facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to

the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In other words, the ALJ's findings are conclusive if they are supported by substantial evidence.

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (overruled on other grounds); 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform

past relevant work. *Id.* § 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* § 404.1520(a)(4).

## II. FACTUAL AND PROCEDURAL HISTORY

Lyons protectively filed a DIB application on August 18, 2023, alleging disability beginning March 28, 2023.[1] [TR at 10]. Her application identified three physical conditions (rheumatoid arthritis, scoliosis, and hip replacements) and two mental conditions (bipolar disorder and depression). [TR at 114, 242]. Her later disability reports listed no new conditions. [TR at 299, 309]. The agency denied the claim initially on December 15, 2023 and again on reconsideration on April 15, 2024. [TR at 10].

ALJ Jerry Lovitt held a telephone hearing on October 24, 2024. [TR at 10]. Lyons appeared with Patsy Rae Hughes, a non-attorney representative. [*Id.*]. Vocational expert ("VE") Betty Hale also testified. [TR at 10, 23]. Lyons was thirty-five years old on her alleged onset date, which made her a younger individual under the regulations. [TR at 22]. She has a limited education and past relevant work as a merchandise deliverer. [TR at 21–22].

[1] The Administrative Transcript ("TR") is docketed at DE 5. The Court shall utilize the pagination generated by the Commissioner when referencing the transcript.

The ALJ issued an unfavorable decision on November 15, 2024. [TR at 23]. At step one, he found that Lyons had not engaged in substantial gainful activity since her alleged onset date. [TR at 13]. At step two, he found the following severe impairments: "obesity; degenerative disc disease; degenerative joint disease; headaches; hip dysfunction; generalized anxiety disorder; and major depressive disorder." [*Id.*]. He found her restless leg syndrome and rheumatoid arthritis non-severe. [TR at 14]. At step three, he concluded that none of her impairments met or medically equaled a listing. [TR at 14–15]. In rating her mental functioning, he found moderate limitations in three broad areas and a mild limitation in interacting with others. [TR at 18].

The ALJ then determined that Lyons had the RFC to perform sedentary work with the following limitations:

> [T]he claimant can occasionally climb ramps and stairs and she can occasionally stoop, balance, kneel, and crouch. The claimant should not crawl, nor climb ladders, ropes, and scaffolds; should not have exposure to unprotected heights and no more than occasional exposure to temperature extremes, vibrations, and no exposure to workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost. The claimant is limited to a work environment with no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations. The claimant can occasionally push and pull hand and foot controls with the bilateral upper and lower extremities. The claimant is able to understand, remember, and carry out simple, routine instructions; and who is able to sustain concentration in completing simple, repetitive, routine tasks; and the claimant can use judgment in making simple work-related decisions consistent with this type of work. The claimant requires an occupation with an established and predictable routine, and with familiar procedures in place, as she can occasionally deal with changes in a routine work setting. The claimant should not work in a manufacturing sector with fast-paced production line, quota based tandem tasks, or production pace assembly line work. The claimant

> would require the use of a hand-held assistive device for assistance with ambulation only and should be allowed to transition from the seated position to the standing position every 30 minutes, for 2-3 minutes, while at the workstation and while remaining on task.

[TR at 15]. In reaching that RFC, the ALJ considered a letter from Bradley A. Sansom, Ed.D., dated August 22, 2024. [TR at 19, 1111]. Dr. Sansom signed the letter as a "Marriage and Family Therapist Associate" at Open Doors Counseling Center. [TR at 1111]. He reported seeing Lyons weekly by telehealth since November 20, 2023, and listed six diagnoses. [*Id.*]. He wrote that "she struggles to function daily" and "can be crippled with depression and stuck in her bed for days at a time." [*Id.*]. He concluded that she "truly cannot function at this time in a work environment." [*Id.*]. While the ALJ considered the opinion, he did not find it persuasive. [TR at 19].

At step four, the ALJ found that Lyons could not perform her past relevant work. [TR at 21–22]. At step five, the VE testified that a person with Lyons's vocational profile and RFC could work as an order clerk for food and beverage. The VE estimated 46,000 such jobs in the national economy. [TR at 23]. The ALJ therefore concluded that Lyons was not disabled from March 28, 2023, through the date of his decision. [*Id.*]. The Appeals Council denied review on January 13, 2026. [TR at 1]. Lyons filed this action on February 25, 2026. [DE 1].

## III. ANALYSIS

Lyons argues the ALJ did not account for the "total limiting effect" of her impairments when formulating her RFC. [DE 9, Page ID# 1137]. A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

At the hearing level, the ALJ alone is responsible for assessing it. *Id.* § 404.1546(c). In doing so, the ALJ must consider all "the relevant medical evidence and other evidence." *Id.* § 404.1545(a)(3). In this regard, Lyons contends the ALJ fell short of that obligation in two respects. [DE 9, PageID# 1139–40]. First, she argues that the ALJ improperly found Dr. Sansom's opinion unpersuasive. Second, Lyons argues that the ALJ ignored her fibromyalgia altogether. In her reply, Lyons links the two arguments. She asserts that the ALJ's failure to address her fibromyalgia "necessarily tainted" his evaluation of Dr. Sansom's opinion. [DE 17, PageID# 1180].

The Court reverses the order presented by the parties and takes up the fibromyalgia argument first. It is the focus of Lyons's reply, and its resolution informs the dispute over Dr. Sansom's opinion. The Court then turns to the ALJ's evaluation of that opinion under 20 C.F.R. § 404.1520c. Neither argument warrants remand.

### A. THE ALJ'S SILENCE ON FIBROMYALGIA DOES NOT REQUIRE REMAND

Lyons argues that the ALJ committed reversible error because his decision never mentions her fibromyalgia. [DE 9, PageID# 1148–50]. She contends that the condition amplified her pain and mental health symptoms. She further contends that its subjective nature undercuts the ALJ's reasons for discounting Dr. Sansom's opinion. [*Id.*]. The Commissioner responds that her providers listed fibromyalgia mainly as a past diagnosis. He adds that the condition was controlled with gabapentin and did not meet the durational requirement. [DE 16, PageID# 1171–72]. In reply, Lyons characterizes those points as impermissible *post hoc* rationalizations. [DE 17, PageID# 1175–79].

The record is clear that the ALJ never mentions fibromyalgia. Thus, the question before the Court is whether that silence requires remand.

### 1. **Lyons did not establish fibromyalgia as a medically determinable impairment.**

Fibromyalgia can be a severe impairment, yet its sufferers can "present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Social Security Ruling 12-2p explains how a claimant establishes the condition as a medically determinable impairment. SSR 12-2p, 77 Fed. Reg. 43,640 (July 25, 2012). Initially, a diagnosis is not enough. "We cannot rely upon the physician's diagnosis alone." *Id.* at 43,641. Rather, "[t]he evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* The record must also contain evidence satisfying either the 1990 or the 2010 criteria of the American College of Rheumatology. *Id.* Even when the condition is established, "a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits." *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (quoting *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008)).

Lyons's record plainly falls short of these requirements. Fibromyalgia appears largely as an entry in her medical history and problem lists. [*See*, *e.g.*, TR at 402, 494, 783]. At a November 2022 rheumatology visit, a nurse practitioner listed "FMS" in the assessment and noted that Lyons "was switched to gabapentin." [TR at 406]. The examination showed normal range of motion and a tender joint count of zero. [TR at 405–06]. Her primary care provider later wrote that "Fibro appears controlled with Gabapentin," that her "Fibro [was] stable," and that it was "managed by

Gabapentin, working well." [TR at 800, 1033, 1045]. No provider documented a tender-point examination. No provider applied a diagnostic criteria. Lyons asserts that she satisfies the 2010 criteria, but the only record support she cites for that assertion is a set of diagnosis entries. [DE 9, PageID# 1149 (citing TR at 494, 787, 1033)]. Asserting a diagnosis is not the same as establishing a medically determinable impairment.

Just as important, Lyons never presented fibromyalgia to the ALJ as a basis for disability. Her application listed rheumatoid arthritis, bipolar disorder, depression, scoliosis, and hip replacements. [TR at 242]. Her later disability reports identified no new conditions. [TR at 299, 309]. She did not mention fibromyalgia at her hearing. [*See* TR at 37–67]. The Commissioner does not argue forfeiture, and the Court does not rest on it. But an ALJ cannot be faulted for failing to analyze a condition no one asked him to consider. *Cf. Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (finding no "obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability").

**2. <u>Any error was harmless.</u>**

Even assuming the ALJ should have addressed fibromyalgia at step two, the omission does not warrant remand. An erroneous finding at step two is "harmless where the ALJ properly considers nonsevere impairments at later steps." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). To be sure, the ALJ here made no finding on fibromyalgia. But that distinction does not change the analysis. The question remains whether the ALJ accounted for Lyons's symptoms in crafting her RFC. The ALJ stated that he considered all of Lyons's medically determinable

impairments, "including those that are non-severe." [TR at 13–14]. He also stated that he considered "all symptoms." [TR at 16]. The Sixth Circuit has accepted similar statements as sufficient. *Emard*, 953 F.3d at 851.

The ALJ's opinion bears this out. Specifically, the ALJ acknowledged Lyons's allegations of "rheumatoid arthritis achiness and pain in multiple sights [*sic*]." [TR at 16]. He found the state agency physicians' light-work findings only partially persuasive. [TR at 20]. He explained that Lyons "continues to experience back and hip pain and continues to require the use of a handheld assistive device." [*Id.*]. He consequently reduced her to sedentary work with a cane and a sit-stand option. [TR at 15, 20]. He also precluded workplace hazards "due to a pain distraction." [TR at 21]. The co-occurring conditions Lyons emphasizes fared no differently. The ALJ found her depression and anxiety to be severe impairments. He then limited her to simple, routine work with few changes and no fast-paced production. [TR at 13, 15, 21].

Lyons does not identify any functional limitation caused by fibromyalgia that the RFC fails to address. That omission matters. "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019). And the burden of showing that an error is harmful "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Lyons has not carried that burden.

**3. <u>The Court does not rely on the Commissioner's *post hoc* reasoning.</u>**

Lyons correctly notes that the Commissioner's arguments about gabapentin and duration appear nowhere in the ALJ's decision. An agency's action "must be upheld, if at all, on the basis articulated by the agency itself." *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) (citation omitted). Thus, the Court ignores those arguments.

However, that does not end the inquiry. Rejecting counsel's rationale is different from finding harmful error. Harmless-error review asks whether the omission affected the outcome, and Lyons bears the burden of showing that it did. *See Shinseki*, 556 U.S. at 409. Per the ALJ's own findings, the ALJ accounted for Lyons's pain and mental health symptoms in the RFC. Lyons, for her part, identifies no fibromyalgia-related limitation that the RFC omits. Consequently, the ALJ's silence on fibromyalgia was harmless.

**4. <u>Lyons's authorities are distinguishable.</u>**

Lyons relies on a handful of cases in support of her position. However, upon closer review, those cases involved a materially different record. In *Huffman v. Saul*, the ALJ found fibromyalgia to be a severe impairment but then discounted the claimant's symptoms based on normal imaging and other objective findings. No. 5:19-CV-449-CHB, 2020 WL 6937441, at *1–2, 4 (E.D. Ky. Nov. 23, 2020). The claimant in *Mears* alleged disability due to fibromyalgia from the outset. *Mears v. Comm'r of Soc. Sec.* Admin., No. 3:25-CV-01392, 2026 WL 2357486, at *1 (N.D. Ohio Aug. 14, 2026), report and recommendation adopted, 2026 WL 2572609 (N.D. Ohio Aug. 31,

2026). And in *Stewart*, a physician examined the claimant, documented tenderness, and found that her questionnaires met the diagnostic criteria. *Stewart v. Comm'r of Soc. Sec. Admin.*, No. 1:25-CV-00903-DAC, 2026 WL 809543, at *9–10 (N.D. Ohio Mar. 24, 2026). Even then, the court called the question "a close call." *Id.* at *23.

Lyons's record contains nothing comparable to these cases.

## B. THE ALJ ADEQUATELY EVALUATED DR. SANSOM'S OPINION

Lyons next argues that the ALJ failed to properly evaluate Dr. Sansom's opinion under 20 C.F.R. § 404.1520c. [DE 9, PageID# 1139–51]. She contends that the opinion is not vague and that the ALJ ignored its supporting explanations. [DE 9, PageID# 1140–43]. She also contends that the ALJ mischaracterized the record in finding the opinion inconsistent with other evidence. [DE 9, PageID# 1143, 1150–51]. The Commissioner responds that the ALJ addressed both supportability and consistency as the regulations require. [DE 16, PageID# 1169–71]. In reply, Lyons rests on her opening brief, apart from arguing that her fibromyalgia tainted the ALJ's analysis. [DE 17, PageID# 1180].

For claims filed after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight" to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of each opinion. Supportability and consistency are the most important factors, and the ALJ must explain how he considered both. *Id.* § 404.1520c(b)(2). Supportability asks how well "the objective medical evidence and supporting explanations presented by a medical source" support the opinion. *Id.* § 404.1520c(c)(1). Consistency compares the opinion to "the evidence from other medical sources and nonmedical sources in the claim." *Id.* §

404.1520c(c)(2). "[T]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022).

The ALJ's analysis meets that standard. He explained:

> This opinion is from a treating source but is not fully supported by evidence in the record, is vague as to specific vocational limitations, and appears is based on an overreliance on the claimant's subjective reports rather than objective, clinical evaluation (Exhibits C9F; C14F). It is internally inconsistent as treatment notes in the record do not note any acute or chronic disabling mental conditions outside of the claimant's self-reports. Many office visits provided in the record show a normal mood or affect (Exhibits C3F/30, 33; C4F/5, 15, 20; C5F/33, 40, 46, 58; C7F/11, 25). In addition, the totally debilitating symptoms described are not consistent with the claimant's reports of teaching homeschool to her 7-year-old each day and the attentiveness, motivation, and presence that would require (Exhibits C3E; C6E; C8E).

[TR at 19].

**1. <u>Supportability</u>**

The ALJ gave two supportability reasons, and the record bears out both. First, he found the opinion "vague as to specific vocational limitations." [*Id.*]. Dr. Sansom's letter lists six diagnoses and describes how Lyons "struggles." [TR at 1111]. It never translates those struggles into specific functional limitations. An ALJ may properly discount an opinion that is vague and undefined. *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) (upholding the ALJ's rejection of a limitation that was "vague and not defined").

Second, the ALJ found that the opinion relied too heavily on Lyons's subjective reports. [TR at 19]. He tied that finding to Dr. Sansom's own materials, Exhibits C9F and C14F. [*Id.*]. Exhibit C9F consists entirely of six screening questionnaires that Lyons completed herself and "submitted . . . via the client portal." [TR at 980–95; *see* TR at 982, 985, 987, 990, 992, 995]. Exhibit C14F is the letter itself. [TR at 1111]. These appear to be the "battery clinical assessment" on which Dr. Sansom relied. [TR at 1111]. An opinion's reliance on subjective claims rather than objective clinical data is a legitimate reason to find it less persuasive. *Pierce v. O'Malley*, No. 5:24-035-DCR, 2024 WL 3541202, at *2 (E.D. Ky. July 25, 2024) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013)); *see also Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011). Psychiatric impairments are admittedly less amenable to objective testing. *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989). But the ALJ did not reject Lyons's diagnoses. He found that the support Dr. Sansom offered for his functional conclusions came from Lyons herself.

Lyons's authorities are not persuasive. In *Kenneth M.*, the ALJ combined both factors "into one wholly cursory sentence." *Kenneth M. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00182, 2025 WL 1948987, at *6 (S.D. Ohio July 16, 2025). His citations also addressed only consistency. *Id.* In *Eckert*, this Court remanded where the ALJ "vaguely wave[d]" to "a majority of the objective medical evidence" without identifying it. *Eckert v. O'Malley*, No. 5:22-CV-00316-MAS, 2024 WL 841765, at *5 (E.D. Ky. Feb. 28, 2024). Here, the ALJ identified specific defects in the opinion and cited the

source's own records. Nor did the ALJ need to recite each of Dr. Sansom's explanations. [*See* DE 9, PageID# 1141]. His summary captured the substance of the letter. [TR at 19]. An ALJ "is not required to discuss every detail presented in the 'voluminous case records' nor does she need to explain her evaluation of each portion of a medical source's opinion." *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022).

**2. <u>Consistency</u>**

The ALJ also explained why the opinion conflicted with other evidence. He cited numerous office visits documenting a normal mood or affect. He also cited Lyons's reports that she homeschooled her son each day. [TR at 19]. Lyons responds by pointing to elevated screening scores, reports of agoraphobia, and other records favorable to her. [DE 9, PageID# 1143–49]. The ALJ did not ignore that evidence. Rather, he acknowledged a PHQ-9 score of 22 and a GAD-7 score of 20. [TR at 17]. He found the state agency psychologists' mild ratings unpersuasive because Lyons's conditions were "more severe" than they recognized. [TR at 20]. And he assigned mental limitations accordingly. [TR at 15, 21]. Lyons's competing view of the evidence is a "veiled attempt to have [the Court] reweigh the evidence." *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022).

Lyons also argues that the ALJ overlooked a qualifier in her function report. [DE 9, PageID# 1151]. In that report, she wrote that she homeschools her son but that "[m]y wife helps me with our child & his daily needs." [TR at 277]. However, the qualifier does not undermine the ALJ's reasoning. The ALJ relied on Lyons's ability to teach her son, not on her ability to meet all of his needs alone. [TR at 19].

The record consistently describes that she homeschools her son, and one lists it as part of her daily routine. [TR at 265, 277]. Her wife's third-party report says the same. [TR at 252]. The ALJ did not mischaracterize this evidence.

#### 3. Remaining arguments

Two final points warrant brief mention. First, Dr. Sansom's statement that Lyons "truly cannot function at this time in a work environment" addresses an issue reserved to the Commissioner. [TR at 1111]. Such statements are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c).[2] Second, Lyons argues that the ALJ should have viewed the opinion "in light of" her fibromyalgia. [DE 17, PageID# 1180]. Dr. Sansom's letter never mentions fibromyalgia or physical pain. It addresses only her mental diagnoses. [TR at 1111]. Thus, fibromyalgia has no bearing on whether the letter was supported or consistent.

The ALJ applied the correct legal standards in evaluating Dr. Sansom's opinion. Substantial evidence supports his conclusion that it was not persuasive.

## IV. CONCLUSION

Lyons has not shown that the ALJ's silence on fibromyalgia warrants remand. Nor has she shown that the ALJ erred in finding Dr. Sansom's opinion unpersuasive. The ALJ applied the correct legal standards, and substantial evidence supports his decision. Accordingly, and the Court being sufficiently advised, **IT IS ORDERED**

[2] The ALJ cited Social Security Ruling 96-5p on this point. [TR at 19]. That Ruling was rescinded for claims filed on or after March 27, 2017. Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). Lyons filed her claim in August 2023. [TR at 10]. The error is harmless because the current regulation compels the same result. 20 C.F.R. § 404.1520b(c)(3).

that the Commissioner's final decision denying Lyons's application for Disability Insurance Benefits is **AFFIRMED**. A separate judgment will follow.

Signed this the 17th of November, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY